**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMIAH JACKSON,

*Plaintiff,*

*v.*

JULIANA MARTINO, et al.,

*Defendants.*
_________________________________/

CASE NO. 2:22-cv-10161

DISTRICT JUDGE JONATHAN J.C. GREY
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON DEFENDANTS ITOTA, JEFFERSON, AND VELK's MOTION FOR SUMMARY JUDGMENT (ECF No. 73)**

## I. RECOMMENDATION

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendants Itota, Jefferson, and Velk's motion for summary judgement (ECF No. 73).

## II. REPORT

### A. Background

Jeremiah Jackson is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). (ECF No. 1, PageID.2). Jackson brought this action under 42 U.S.C. § 1983 alleging that various prison officials violated his Eighth Amendment rights by failing to provide necessary post-operative care after he received hip replacement surgery. (*Id.* at PageID.4–6). Following his surgery,

Jackson received a "medical detail" for a bottom bunk, an air mattress, special shoes, and a cane. (*Id.* at PageID.4). But when he returned to his prison, medical staff refused to provide these accommodations and failed to provide adequate treatment for his pain. (*Id.* at PageID.5). Over the next several months, Jackson sent a total of thirteen written complaints regarding his lack of medical care or prescribed medical detail but was either "placed on the waiting list" or told that "nothing could be done for [him]." (*Id.*)

The MDOC provides a three-step, internal process for prisoners to raise formal complaints. (ECF No. 27-2, PageID.102–05). At step one, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a "grievance" within five business days. (*Id.* at PageID.102–03). A prisoner's step one grievance must include the "[d]ates, times, places, and names of all those involved in the issue being grieved . . . ." (*Id.* at PageID.102). If the inmate is dissatisfied with the disposition of the step one grievance or does not receive a response ten days after the due date, then he or she may file a step two grievance using the appropriate form. (*Id.* at PageID.104). Similarly, if the inmate is dissatisfied with the step two response or does not receive a response for ten days after the response was due, he or she has ten days to file a step three grievance. (*Id.* at PageID.105). While the MDOC has no deadline to

respond to a claimant's step-three appeal, its internal policies note that it will "[g]enerally" respond to a step-three appeal "within [sixty] business days." (*Id.*)

In June 2020, Jackson submitted a step-one grievance, complaining that he had not received any follow-up treatment since returning to MRF following surgery. (ECF No. 27-3, PageID.114–15). In the grievance, Jackson requested handicap accommodations, informed staff that he was in pain, and explained that he had made several attempts to meet with one of his medical providers, Juliana Martino, for the last two months. (*Id.* at PageID.115). Jackson timely appealed this grievance through all three steps of the MDOC's grievance procedure and was denied relief on the merits of his requests at each step. (*Id.* at PageID.111–15).

Jackson also alleges that he submitted a second grievance on September 1, 2021, in addition to a third grievance he filed on January 25, 2021, complaining that a prescribed air mattress was removed from his cell "almost 30 days before" his medical detail was set to expire. (ECF No. 1, PageID.6; ECF No. 78, PageID.399). Jackson provides no details about the substance of his second grievance, but he asserts that he appealed this grievance through step three. (ECF No. 78, PageID.399–401). He claims, however, that he never received a response to his step three appeal and speculates that the grievance appeal form may have been "destroy[ed]" by a corrections officer. (*Id.* at PageID.400).

Jackson filed this lawsuit on January 5, 2022. (ECF No. 1, PageID.1). Three of the defendants—Kingsley Itota, Charles Jefferson, and Daniel Velk—have now moved for summary judgment, arguing that Jackson failed to properly exhaust his internal remedies as required by the Prison Litigation Reform Act ("PLRA"). (ECF No. 73).

**B. Summary Judgment Standard**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004). The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record for "a

reasonable finder of fact could find in its favor." *Anderson*, 477 U.S. at 248.

**C. Discussion**

Under the PLRA, prisoners may not bring a § 1983 action against prison officials to challenge the conditions of their confinement without first exhausting their administrative remedies. 42 U.S.C. § 1997e(a) (2018); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). And not only must prisoners exhaust their administrative remedies before filing a complaint, but they must do so "properly," meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).

Yet that stringent rule comes with an important caveat: prisoners need only exhaust remedies that are "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, prisoners need only exhaust remedies that are "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 732–38 (2001)).

The parties here do not dispute that Jackson did not properly exhaust all his administrative remedies. Under the MDOC's grievance procedure, a prisoner does not fully exhaust his or her administrative remedies until he or she receives a response at step three. *Richards v. Perttu*, No. 2:20-cv-76, 2022 WL 842654, at *2 (W.D. Mich. Mar. 2, 2022); *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at

*2 (E.D. Mich. June 1, 2022) ("The grievance process is exhausted once the final response is issued in Step III.").[1]

Of the three grievances Jackson claims to have filed, he only received a step-three response to his June 2020 grievance. (ECF No. 27-3, PageID.110–11). But this grievance did not comply with the MDOC's procedural rules. While the MDOC requires inmates to name all officials "involved in the issue being grieved," Jackson

---

[1] Recognizing that the MDOC's grievance policies predict that it will "[g]enerally" respond to step-three appeals "within [sixty] business days," many Courts have held that Michigan inmates "properly exhaust[]" their administrative remedies if they receive no response to their step three appeal within sixty business days. *See, e.g.*, *Roden v. LaPham*, No. 21-12183, 2023 WL 2646203, at *2–3 (E.D. Mich. Mar. 27, 2023); *Hardrick v. Jenkins-Grant*, No. 20-cv-12258, 2022 WL 667790, at *1 (E.D. Mich. Jan. 31, 2022), *report & recommendation adopted by* 2022 WL 662282 (E.D. Mich. Mar. 4, 2022). Yet although Michigan inmates (in most circumstances) need not wait longer than sixty business days for a step-three response, that is because such a delay renders the inmate's step-three appeal unavailable—not because the inmate has completed, or "exhausted," the grievance process. Because the sixty-day response period "is not written in mandatory terms," it operates as an aspirational goal rather than a deadline that definitively ends the grievance process. *Roden v. Lapham*, No. 2:21-cv-12183, 2022 WL 19518406, at *5 (E.D. Mich. Sept. 26, 2022), *report & recommendation adopted by* 2023 WL 2646203 (E.D. Mich. Mar. 27, 2023); *Jarrett v. Snyder*, No. 1:13-cv-139, 2014 WL 4472728, at *7 (W.D. Mich. Aug. 20, 2014), *report & recommendation adopted in relevant part by* 2014 WL 4472732 (W.D. Mich. Sept. 10, 2014). So until an inmate receives a step-three response, the MDOC's policies still allow for the possibility of relief at the administrative level. But that does not mean that inmates must wait "forever" for a step-three response. *Berryman v. Haas*, No. 17-cv-10762, 2017 WL 3263980, at *5 (E.D. Mich. July 31, 2017). Analyzing a similar issue arising out of Tennessee's grievance procedure, the Sixth Circuit has held that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004). But in reaching this holding, the Court did not reason that inmates complete the grievance process after waiting for a timely response. Rather, it relied on decisions from four other Circuits who all explicitly held that untimely responses to grievances render an inmate's administrative remedies unavailable. *Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350, at *7 (E.D. Mich. Oct. 11, 2023); *see Boyd*, 380 F.3d at 996.

only identified Defendant Martino in this grievance. (ECF No. 27-2, PageID.102; ECF No. 27-3, PageID.114). Thus, his June 2020 grievance only served to exhaust his claims against Martino, not any other official. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that under the MDOC's grievance policy, the prison "does not exhaust his administrative remedies . . . when he does not specify the names of each person from whom he seeks relief"); *see also Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011); (*cf.* ECF No. 49, PageID.280–84).[2]

Still, Jackson argues that while his June 2020 grievance may not have exhausted his claims against Itota, Velk, and Jefferson, his September 2021 grievance did. (ECF No. 78, PageID.399–401). He explains that although he filed his step-three appeal on May 25, 2022, he never received a response from the MDOC. (*Id.* at PageID.399). Because Jackson was in administrative segregation at the time he attempted to file his appeal, he provided his appeal form to a corrections

[2] True, when officials excuse an inmate's procedural mistakes and consider a grievance on its merits, they may not later argue that the prisoner had failed to properly exhaust his or her administrative remedies. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). And here, the MDOC denied Jackson's grievance on its merits rather than for his failure to name every involved official. (ECF No. 27-3, PageID.111, 113, 115). Yet the MDOC cannot be said to have excused this shortcoming as Jackson named an official in his grievance but did not indicate that any other officials were involved. The MDOC could not have known that Jackson failed to name every involved individual in his grievance. *Cf. Brown v. McCulick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. 2019); *Ewing v. Finco*, No. 1:17-cv-505, 2018 WL 6033537, at *4 (W.D. Mich. Sept. 1, 2018); *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146, at *2 (W.D. Mich. Oct. 24, 2013).

officer whom he relied on to file the form on his behalf; however, Jackson suspects that this officer may have neglected to mail this form. (*Id.* at PageID.399–400).

To be sure, inmates need only exhaust administrative remedies that are "capable" of providing relief, and an "administrative procedure is not capable of providing relief "when (despite what regulations or guidance material may promise)" officials are "unable" or "unwilling to provide any relief to" an aggrieved inmate. *Ross*, 578 U.S. at 643. Thus, a prison's administrative remedies are not available to inmates if officials neglect to provide "timely" responses that are necessary for the inmate to proceed through the grievance process. *See Boyd*, 380 F.3d at 966; *accord Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir.2002). But for three reasons, I suggest that Jackson's June 2020 grievance did not exhaust his available administrative remedies.

First, Jackson fails to raise a genuine dispute as to whether this grievance even exists. To show that a fact can or cannot be "genuinely disputed," a party must support its assertion by citing "materials" in the record such as declarations, affidavits, documents, or declarations. Fed. R. Civ. P. 56(c)(1)(A). A party may not, however, assert a fact merely by raising it in a brief or citing its own pleadings. *Anderson*, 477 U.S. at 248; *Taylor v. Small*, 350 F.3d 1286, 1294–95 (D.C. Cir. 1998); *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991); 10A Charles Alan

Wright et al., Federal Practice and Procedure § 2723 (4th ed. 2023). Instead, parties can assert facts through declarations or affidavits. Fed. R. Civ. P. 56(c)(1)(A). But a valid affidavit must "be sworn to" before "an 'officer authorized to administer oaths," and to execute a valid declaration, a declarant must certify that its declaration is "true and correct" under "penalty of perjury." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (internal quotation marks omitted) (first quoting *Affidavit*, Black's Law Dictionary (5th ed. 1979); and then quoting 28 U.S.C. § 1746 (2018)). Jackson's response brief qualifies as neither an affidavit nor a declaration, so it is not evidence the Court can consider on Defendants' motion for summary judgment. (ECF No. 78). And outside of Jackson's response brief, the record contains no evidence that he submitted a grievance in September 2021.

Second, even if the Court could consider Jackson's assertion that he filed this September 2021 grievance, Jackson does not provide the Court with enough information for it to determine whether the grievance would have exhausted his claims against Itota, Velk, and Jefferson. In fact, Jackson provides no details about the substance of this grievance and the MDOC's responses at steps one and two. (*Id.*) He does not tell the Court what issues he raised in the grievance. (*Id.*) He does not tell the Court who he named in the grievance. (*Id.*) And he does not tell the Court whether the MDOC denied his grievance on its merits at steps one and two. (*Id.*) It is not enough for Jackson to have exhausted *a* grievance—he needed to have

exhausted a grievance against Itota, Velk, and Jefferson that concerned the same controversy as his complaint. *See Davis v. Michigan Dep't of Corrections*, No. 19-2264, 2020 WL 6364583, at *2 (6th Cir. Sept. 1, 2020). Simply telling the Court that he appealed a grievance through step three is not enough to create a genuine issue of material fact that he exhausted his administrative remedies.

And third, even if the Court could consider Jackson's bare assertions, and even if he had provided the Court with enough information for it to determine that he had properly exhausted his administrative remedies, Jackson filed his complaint prematurely. Because the PLRA "makes exhaustion a precondition to filing an action in federal court" a plaintiff "may not exhaust administrative remedies" while his or her "federal suit" is pending. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999); *see Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). Thus, inmates must properly exhaust their administrative remedies before filing a complaint in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89–90, 92 (2006). Yet Jackson's September 2021 grievance postdates his complaint in this action by several months. Accordingly, he cannot rely on his September 2021 grievance to create a genuine issue of material fact as to whether he satisfied the PLRA's

exhaustion requirement. *Cf. Threatt v. Williams-Ward*, No. 15-12585, 2016 WL 6653013, at *3 (E.D. Mich. Jul. 13, 2016).[3]

In sum, none of Jackson's grievances properly exhausted his claims against Itota, Velk, and Jefferson. Accordingly, the Court should grant summary judgment on behalf of these Defendants.

**C. Conclusion**

For these reasons, **I RECOMMEND** that the Court **GRANT** Itota, Velk, and Jefferson's motion for summary judgement (ECF No. 73) and **DISMISS** Jackson's claims against these Defendants **WITHOUT PREJUDICE**.[4]

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. §

[3] Although Jackson does not argue that he exhausted his administrative remedies through his January 2021 grievance, that grievance would not satisfy the PLRA's exhaustion requirement for the same three reasons.

[4] *See Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006) ("[T]he appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 28, 2023

s/ Patricia T. Morris
Patricia T. Morris
United States Magistrate Judge